UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MANFRED BERNIER,

                                                  Plaintiff,

    v.                                                                  9:17-CV-1376 (LEK/ATB)

THOMAS CARTER, et al.,

                                                  Defendants.

---

MANFRED BERNIER, Plaintiff, pro se
CARL G. EURENIUS, Asst U.S. Attorney for Defendants Carter and King

ANDREW T. BAXTER, United States Magistrate Judge

**REPORT-RECOMMENDATION**

Plaintiff commenced this action pursuant to *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), alleging that defendants violated his constitutional right to adequate medical care while he was incarcerated at Ray Brook Federal Correctional Institution ("FCI Ray Brook"). (Complaint ("Compl.")) (Dkt. No. 1). Presently before the court is the motion for summary judgment, pursuant to Fed. R. Civ. P. 56, of the remaining defendants–Lt. Carter and Officer King. (Dkt. Nos. 61, 62). This matter was referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). Plaintiff has not responded to the motion, even after the court, sua sponte, afforded him an extension of time to do so. (Dkt. No. 64).

**I.    Procedural History**

Plaintiff filed the instant complaint on December 21, 2017. (Dkt. No. 1). On March 7, 2018, I granted plaintiff's motion to proceed IFP, denied without prejudice his

motion to appoint counsel, and concluded that plaintiff's claims warranted a response from the defendants pursuant to 28 U.S.C. § 1915(e). (Dkt. No. 5). On August 22, 2019, all but one of the named defendants filed waivers of service.[1] (Dkt. No. 30).

On November 4, 2019, the appearing defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 38). Subsequent to his review of my report and recommendation relative to the defendants' pre-answer motion (Dkt. No. 43), Senior U.S. District Judge Lawrence E. Kahn issued a decision and order on May 1, 2020 dismissing certain claims and defendants from this action (Dkt. No. 44). Plaintiff's surviving claims include (1) an Eighth Amendment denial of medical care claim against Lieutenant ("Lt.") Carter, and (2) an Eighth Amendment failure to intervene claim against Officer King. Officer King and Lt. Carter presently move this court for summary judgment, seeking dismissal of the complaint. For the following reasons, this court recommends granting defendants' motion as to the claims against Officer King, but denying defendants' motion as to the claims against Lt. Carter.

## II. Relevant Facts and Contentions

The underlying facts, largely undisputed, were set forth in detail in my March 24, 2020 order and report-recommendation. (Dkt. No. 43 at 2–5). Thus, for purposes of

---

[1] The United States Marshals were directed to serve the summons and complaint on the defendants in light of plaintiff's IFP status. (Dkt. No. 5 at 6). However, it soon became apparent that the defendants were no longer employed at FCI Ray Brook, and the U.S. Marshals were unable to effect service. (Dkt. Nos. 8, 10, 18). Nonetheless, the defendants eventually filed waivers of service, with the exception of defendant Dickson. Dickson no longer worked for the Bureau of Prisons ("BOP"), and the U.S. Attorney did not have his current address on file. (Dkt. Nos. 15 at 3; 27 at 1–2). The claims against Dickinson were ultimately dismissed on August 26, 2020, in light of plaintiff's failure to locate and serve him. (Dkt. No. 52).

this opinion, I will summarize only those facts relevant to plaintiff's claims against Officer King and Lt. Carter.

Plaintiff claims that at approximately 1:00 a.m. on November 19, 2015, while incarcerated at FCI Ray Brook, he awoke to excruciating, stabbing abdominal pain. (Compl. ¶ 11). Plaintiff claims that the pain was so intense that he vomited numerous times and collapsed to the floor. (Compl. ¶ 12). Plaintiff states that he cried out to his cell-mate, asking him to try to get the attention of an officer in the housing unit. (Compl. ¶ 13). Plaintiff states that his cell-mate began screaming for help "under the door space of the solid door." (*Id.*).

Plaintiff states that his cell was located on the "B-side of a 2 sided housing unit." (Compl. ¶ 14). The on-duty officer, who was stationed on the A-side of the unit, only made rounds every two hours. (*Id.*) Dismissed defendant Dickson arrived one half-hour after plaintiff's cell-mate began yelling for help. Officer Dickson told plaintiff he could not unlock his cell door or call for medical assistance on the overnight shift because "only a lieutenant can make that call." (*Id.*)

Officer Dickson called a lieutenant, and it took another thirty minutes for defendant Carter to arrive. (Compl. ¶ 15). Plaintiff states that Lt. Carter came to his cell, accompanied by defendant Officer King. (Compl. ¶ 16). Plaintiff alleges that Lt. Carter began to "bark" at plaintiff through the door and told plaintiff that he had "better not be faking" or he would charge him with a disciplinary rule violation. (*Id.*) Plaintiff claims that Lt. Carter made various disparaging remarks about plaintiff's condition and told plaintiff to "man up." (*Id.*) Plaintiff told Lt. Carter that he needed medical help, "a

3

nurse, an ambulance, somebody." (*Id.*)  Plaintiff claims that the other officers[2] simply watched as Lt. Carter made fun of the plaintiff. (Compl. ¶ 17).  Plaintiff claims that the other two officers were "smirking and amused" by Lt. Carter's conduct. (*Id.*).

Lt. Carter allegedly told plaintiff that he could sign up for sick-call in the morning, but that he had better not call for help again, "'because if you make me return, there's going to be consequences.'" (Compl. ¶ 19).  Plaintiff states that Lt. Carter then left plaintiff in pain, without alerting any medical personnel.  (*Id.*)  Sick-call was not for another five hours.  (Compl. ¶ 20).  Plaintiff states that he spent the next five hours moaning, writhing, vomiting, grimacing, and groaning, in the worst pain he had ever experienced.  (Compl. ¶ 21).  Plaintiff states that Officers King and Dickson made "a couple more" rounds that night, but all they did was "gawk" at plaintiff.  (*Id.*)

Plaintiff states that, in the morning, he immediately notified the officer on duty of his emergency. (Compl. ¶ 22).  The officer called the medical clinic, and at approximately 6:40 a.m., plaintiff was evaluated at sick call for his abdominal pain. (Compl. ¶ 22; Declaration of Carl G. Eurenius ("Eurenius Decl.") Ex. A at 59–60)). Based on the results of his examination, plaintiff was transported to the emergency room at Adirondack Medical Center for further care.  (Eurenius Decl. Ex. A at 61, Ex. B at 247-48).  There they performed a diagnostic laparoscopy which revealed a "small bowel obstruction, secondary to an internal hernia and small bowel mesenteric tumor[.]" (Eurenius Decl. Ex. B at 244).  During the same laparoscopic procedure, the

---

[2] The court assumes that plaintiff is referring to Officers Dickson and King.

adhesions that were causing plaintiff's bowel obstruction were released and the tumor[3] was removed. (*Id.*). Medical records indicate that plaintiff "tolerated the procedure well." (*Id.* at 245).

Plaintiff was returned to his housing unit at FCI Ray Brook at approximately 8:00 p.m. the same evening. (*Id.* at 245; Eurenius Decl. Ex. D at 242). He was seen at FCI Ray Brook Health Services the next day for a post-operative evaluation, complaining of abdominal pain. (Eurenius Decl. Ex. F). He was provided "T3" and instructed to follow up. Plaintiff returned to sick call approximately four weeks later, complaining of "abdominal pain." (Eurenius Decl. Ex. G).

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which

---

[3]Pathology reports later revealed that the tumor was benign. (Eurenius Decl. Ex. E).

support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

As noted, plaintiff failed to oppose defendant's motion for summary judgment, notwithstanding the fact that he was notified of the consequences of failing to respond. (Dkt. No. 63). "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that movant is proceeding pro se." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 209 (N.D.N.Y. 2008); *Evans v. Albany Cty. Corr. Facility*, No. 9:05-CV-1400 (GTS/DEP), 2009 WL 1401645, at *6 & n.35 (N.D.N.Y. May 14, 2009) (collecting cases). However, "[w]here, as here, the Court elects to conduct an independent review of the record on a motion for summary judgment, a plaintiff's verified complaint should be treated as an affidavit." *Riehl v. Martin*, No. 9:13-CV-439 (GLS/TWD), 2014 WL 1289601, at *5 (N.D.N.Y. Mar. 31, 2014) (*citing Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995)); *Berkley v. Ware*, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at

\*3 (N.D.N.Y. July 6, 2018), report and recommendation adopted, 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018). The court, in its discretion, has elected to conduct an independent review of the record despite plaintiff's failure to respond to the second summary judgment motion and has considered his verified complaint (Dkt. No. 1), as well as his response to the prior summary judgment motion (Dkt. No. 42).

## III. Discussion

### A. Legal Standards

#### 1. Personal Involvement

It has long been established that *Bivens* relief is available only against federal officers who are personally liable for the alleged constitutional violations. *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1860 (2017); *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009)). Vicarious liability is inapplicable to *Bivens* suits, as government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 671 (citing *inter alia Dunlop v. Munroe*, 7 Cranch 242, 269 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); *Robertson v. Sichel*, 127 U.S. 507, 515–516 (1888) ("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties")).

Recently, in the context of the appeal of a qualified immunity issue, the Second

Circuit specifically revisited its standard for determining personal involvement or supervisory liability pursuant to *Iqbal,* articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).[4] Joining other circuits, the Second Circuit held that there is no "special" rule for supervisory liability. *Id*.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id*. The violation must be established against the supervisory official directly.

*Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 676). Quoting a 10th Circuit case, the *Tangreti* court stated that "'after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, *unless that is the same state of mind required for the constitutional deprivation he alleges*.'" *Id.* (alterations in original) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added,

---

[4] *Iqbal* involved the analysis of a *Bivens* cause of action, but there the Court made clear that the standard for determining personal involvement remains the same whether plaintiff seeks redress against a federal official, or against a state agent in an action brought under 42 U.S.C. § 1983. 556 U.S. at 675-76 ("In the limited settings where *Bivens* does apply, the implied cause of action is the federal analog to suits brought against state officials under [§ 1983].") (internal quotations omitted). The Second Circuit has likewise applied the standard interchangeably. *See Tangreti,* 983 F.3d at 616 ([B]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

8

other citations omitted)). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

### 2. Medical Care

The standard for medical treatment under *Bivens* is the same as that used in cases brought under 42 U.S.C. § 1983. *See Gonzalez v. Hasty*, 802 F.3d 212, 221 (2d Cir. 2015) (applying section 1983 standard to *Bivens* action). In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### a. Objective Element

There is a two part inquiry to determine whether an alleged deprivation is "objectively serious." *Benjamin v. Pillai,* 794 F. App'x 8, 11 (2d Cir. 2019) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found

9

liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Salahuddin*, 467 F.3d at 279-80 (citing *Farmer v. Brennan*, 511 U.S. 825, 844-47 (1994)).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Benjamin v. Pillai*, 794 F. App'x at 11 (citing *Salahuddin*, 467 F.3d at 280). The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Salahuddin*, 467 F.3d at 280 (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith*, 316 F.3d at 185-86). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Benjamin v. Pillai*, 794 F. App'x at 11. The court in *Benjamin* reiterated that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Benjamin*, 794 F. App'x at 11 (citing *Smith*, 316 F.3d at 185).

### b.     **Subjective Element**

The second element is subjective and asks whether the official acted with "a

sufficiently culpable state of mind." *Benjamin*, at 11 (citing *Hathaway v. Coughlin*, 511 U.S. 825, 553 (2d Cir. 1996)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 835-37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition, that the charged official possessed "'a state of mind that is the equivalent of criminal recklessness.'" *Benjamin* at 11, (quoting Hathaway, 99 F.3d at 553).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Abreu v. Lipka,* 778 F. App'x 28, 32 (2d Cir. 2019) (quoting *Smith,* 316 F.3d at 184). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Riddick v. Maurer,* 730 F. App'x 34, 38 (2d Cir.

2018) (quoting *Chance*, 143 F.3d at 703). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983 or *Bivens*.

### B. Application

#### 1. Defendant Lt. Carter

Plaintiff claims that Lt. Carter was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Compl. ¶ 26). Specifically, plaintiff claims that Lt. Carter refused to call for help and delayed plaintiff's medical care, leaving him to "languish" in severe pain for five hours until he was seen by a nurse in the morning. (Compl. ¶¶ 26, 28). Plaintiff also asserts that while delaying

plaintiff's medical care, Carter harassed and "menaced" plaintiff verbally. (Compl. ¶ 27).

Lt. Carter previously moved to dismiss plaintiff's medical indifference claim against him in the defendants' pre-answer motion. (Dkt. No. 38). In support of that motion, defendants filed plaintiff's medical records showing that plaintiff was taken to the emergency room on November 19, 2015, underwent laparoscopic surgery, and returned to FCI Raybrook the same evening. (Dkt. No. 62 at 244). Defendants argued that, based on the limited delay between plaintiff's initial complaints of pain and when he was seen by medical staff, and the medical records indicating the resolution of plaintiff's medical condition, Lt. Carter was entitled to judgment as a matter of law. (Dkt. No. 38-1 at 13–15).

The district court adopted my report-recommendation rejecting defendants' argument and denying summary judgment to Lt. Carter. (Dkt. Nos. 43, 44). Specifically, this court held that despite the approximately five-hour delay and the apparent resolution of plaintiff's medical condition, there still remained a question of fact whether Lt. Carter intentionally denied plaintiff immediate medical care when it was clear that plaintiff was in extreme pain. (Dkt. No. 43 at 23–25). In the same opinion, I also clarified that plaintiff's medical records alone did not carry defendants' burden on the motion. The absence of any evidence with respect to defendant Carter's conduct precluded a finding in favor of the defendants, as plaintiff's factual assertions about what happened on the night in question were not otherwise rebutted. (*Id.*).

By way of example, I cited the Second Circuit's decision in *Archer v. Dutcher* in

13

recognizing that summary judgment was not appropriate based on the record before the court. 733 F.2d 14, 16 (2d Cir. 1984). In *Archer*, the Second Circuit held that "if defendants did decide to delay emergency medical aid – even for 'only' five hours – in order to make Archer suffer, surely a claim would be stated under *Estelle*." *Id.* The five to six hour delay was not the only important or determinative fact in *Archer*, there was also the "seriousness of the plaintiff's condition, the extent of [Archer's] suffering, and the defendants' desire to cause the plaintiff to suffer" which all led to the Second Circuit's decision. *See Davidson v. Harris*, 960 F. Supp. 644, 649 (W.D.N.Y. 1997).

Based on this Second Circuit authority and the limited record, defendants' pre-answer motion for summary judgment as to Lt. Carter was denied. (Dkt. Nos. 43, 44). Plaintiff's claim was not precluded as a matter of law based on "only" a five-hour delay in care, and a question of fact remained considering the absence of any evidence rebutting plaintiff's allegations that Lt. Carter knew of and disregarded plaintiff's serious medical condition.

Presently before this court is Lt. Carter's second motion for summary judgment, once again seeking to dismiss plaintiff's Eighth Amendment medical indifference claim against him. Defendants makes two distinct arguments in seeking summary judgment: First, they contend that plaintiff did not suffer a serious medical condition as a matter of law. (Defendants' Memorandum of Law ("Def.'s MOL") at 10–12) (Dkt. No. 61-1). Second, defendants argue that Lt. Carter did not act with a "sufficiently culpable state of mind." (*Id.* at 12–15). For the reasons set forth below, this court recommends denying summary judgment to Lt. Carter.

Defendants' first argument addresses the objective prong of plaintiff's medical indifference claim. Arguing that plaintiff's medical condition was not "serious," defendants assert that plaintiff's "small bowel obstruction" and "adhesions" requiring a "laparoscopic procedure" fall into the same category as other "ailments" courts have found to fall short of the requisite "serious" standard.[5] Defendants also submit the declaration and accompanying medical report of their expert medical witness, James W. Leyhane, M.D., FACP, SFHM ("Dr. Leyhane"). (Declaration of Dr. Leyhane ("Leyhane Decl.")) (Dkt. No. 62-1). Specifically, defendants rely on Dr. Leyhane's opinion that plaintiff did not have a "surgical emergency," in support of their position that plaintiff's pain "due to adhesions of the small bowel" did not rise to the level of a constitutional violation. (*Id.* at ¶ 4).

Defendants miss the mark with respect to their arguments. This court has already rejected defendants' position that the severity of the temporary deprivation of medical care alleged by plaintiff does not rise to the level of an Eighth Amendment claim as a matter of law based on plaintiff's medical records, and the addition of Dr. Leyhane's expert opinion does not alter that opinion. Nothing in the medical expert's affidavit or accompanying report contradicts plaintiff's assertion that he was experiencing "excruciatingly intense, severe stabbing pains" in his abdomen when he awoke in his cell at approximately 1 a.m. the morning of November 19th. In fact, Dr. Leyhane's submission is completely silent on plaintiff's condition and/or state of health prior to

---

[5]Defendants have supplied a laundry list of ailments which they attempt to parallel to plaintiff's condition, including tinnitus; allergies; podiatric and knee injuries; an eye condition; a post-surgery hernia condition; urological, dermatological and cardiac issues; a broken jaw with contusions; migraines; back pain; toothaches; and a broken finger. (Def.'s MOL at 11-12).

15

him arriving to sick call at approximately 6:40 a.m. that morning.

Furthermore, Dr. Leyhane's conclusion that plaintiff did not require "emergency surgery" is not dispositive of whether the alleged pain plaintiff experienced prior to his hospital transfer was significant enough to rise to the level of a constitutional violation. While the parties may argue the semantics to a finder of fact, Dr. Leyhane does not contest that the surgery was "necessary." Plaintiff was taken to the hospital upon examination by medical staff, and underwent surgery the same day. Those facts support plaintiff's detailed allegations[6] describing the nature of the pain that awoke him that morning and through which he alleges to have unnecessarily suffered for five hours due to Lt. Carter's conduct. The record contains sufficient evidence which, if credited by the jury, would support a finding that plaintiff's condition was sufficiently serious, precluding a grant of summary judgment on that aspect of his medical care claim. *See Brock v. Wright,* 315 F.3d 158, 163 (2d Cir. 2003) ("[T]he Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain."); *Gantt v. Horn,* No. 09-CV-7310, 2013 WL 865844, at *9 (S.D.N.Y. Mar. 8, 2013) ("In cases where temporary delays or interruptions in the provision of medical treatment have been held

---

[6]Among other things, plaintiff alleges that he was "jolted awake . . . experiencing excruciatingly intense, severe stabbing pains in the lower right side of [his] abdomen. The pains included a sensation of a grinding fire repeatedly exploding in [his] appendix-liver area." (Compl. at ¶ 11). When he tried to get out of bed to get to the toilet, anticipating he would be physically ill, he collapsed to the floor due to the "furious, savage pains wreaking havoc in [his] abdomen." (*Id.* at ¶ 12). He claims to have vomited up blood, all while "delirious with pain." (*Id.*). The complaint goes on to describe the nature of plaintiff's pain for the five hours until he was seen at sick call. (*Id.* at ¶¶ 15-22). When he was seen by medical staff later that morning, it was noted that he was "writhing in pain" scaled at a level of ten out of ten. (Eurenius Decl. Ex. A at 59–60).

to satisfy the objective seriousness requirement, they have involved either a needlessly prolonged period of delay or a delay that caused extreme pain or exacerbated a serious illness.").

Defendants also posit that no rational fact finder could conclude that Lt. Carter acted with a sufficiently culpable state of mind to satisfy the subjective prong of deliberate indifference. However, in denying defendants' prior motion, I specifically concluded that the record established a material issue of fact with respect to whether Lt. Carter's acted with deliberate indifference. I further explained that, at the very least, the absence of an affidavit by Lt. Carter rebutting plaintiff's assertions rendered dismissal and/or summary judgment inappropriate. Nonetheless, defendants presently renew their application for summary judgment on essentially the same record, without submitting any additional evidence that would allow this court to conclude that Lt. Carter was not deliberately indifferent as a matter of law. Instead, defendants argue that there is "nothing in the record" demonstrating that Lt. Carter intended to inflict pain on plaintiff, or that Carter was subjectively aware of any serious risk to plaintiff. These contentions are belied by the record. This court has previously found that Carter's unprofessional and harassing language, as described by plaintiff, during his alleged medical emergency could show that Carter was intentionally denying plaintiff necessary care. Thus, a question of fact remains as to whether Carter knew of and disregarded plaintiff's serious medical condition.

### 2. Defendant Officer King

Plaintiff claims that Officer King was deliberately indifferent to plaintiff's

17

serious medical needs when he witnessed Lt. Carter's unconstitutional conduct and failed to intervene or call for medical help. (Compl. ¶¶ 29, 30). Like his co-defendant, Officer King moved to dismiss the complaint against in the defendants' pre-answer motion. (Dkt. Nos. 38-1 at 9–10; 38-2). Specifically, Officer King argued that on the date and time of plaintiff's medical emergency, he was not on duty in plaintiff's housing unit (Niagara B). Officer King asserted that his assigned post at FCI Raybrook on November 19, 2015 was in the Mohawk B housing unit from 6:15 a.m. until 4:15 p.m. Thus, Officer King maintained that he was not present at FCI Raybrook, particularly in plaintiff's housing unit, during plaintiff's alleged medical emergency earlier that morning, and therefore could not have been personally involved in violating plaintiff's constitutional rights.

In response to defendants' pre-answer motion, plaintiff argued that he should be afforded the opportunity to conduct discovery in order to show that Officer King was with Lt. Carter the morning of November 19th. (Dkt. No. 42 at 1–3). The district court agreed, denying summary judgment and allowing plaintiff the opportunity to conduct discovery which might reveal evidence indicating that Officer King was present for plaintiff's alleged medical emergency. (Dkt. No. 44). Thus, Officer King filed an answer and the litigation proceeded accordingly.

At this juncture, the deadline for discovery has passed and Officer King has renewed his application for summary judgment on the same basis of lack of personal involvement. In support of his motion, Officer King provides sworn testimony averring that he was not in at FCI Raybrook during Lt. Carter's alleged interaction with plaintiff,

18

along with facility records supporting the fact that his shift assignment would not have placed him in plaintiff's housing unit at that time. (Declaration of Lucas King ("King Decl.") at ¶¶ 4-5, Exs. A, B) (Dkt. No. 61-2). Officer King further maintains that he does not know plaintiff, and has no recollection of witnessing the events set forth in the complaint. (*Id.* at ¶ 3). Based on the foregoing, Officer King has satisfied his burden as movant by demonstrating the absence of evidence showing that he had any personal involvement in the circumstances described in plaintiff's complaint.

In response to Officer King's motion, plaintiff has failed to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," i.e. that King was present in plaintiff's housing unit on the date and time of plaintiff's medical emergency. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Plaintiff has not responded to defendants' pending motion for summary judgment, thus the court infers that discovery yielded no evidence suggesting that Officer King was present on the date and time of plaintiff's alleged medical emergency. Accordingly, and in the absence of any evidence to the contrary, Officer King is entitled to summary judgment for lack of personal involvement in the constitutional violations alleged by plaintiff.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. Nos. 61, 62) be **GRANTED IN PART and DENIED IN PART**, and it is

**RECOMMENDED,** that the defendants' motion for summary judgment (Dkt. Nos. 61, 62) be **DENIED** as to defendant **CARTER**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. Nos. 61, 62) be **GRANTED** as to defendant **KING**, and that the complaint be **DISMISSED IN ITS ENTIRETY AS AGAINST DEFENDANT KING.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 20, 2021

*[signature]*
Andrew T. Baxter
U.S. Magistrate Judge